79 N.Y.2d 808 (1991)
The People of the State of New York, Appellant,
v.
Patrick Norton, Respondent.
Court of Appeals of the State of New York.
Argued November 21, 1991.
Decided December 23, 1991.
Robert M. Morgenthau, District Attorney (Leonard I. Picker and Norman Barclay of counsel), for appellant.
Philip L. Weinstein for respondent.
Chief Judge WACHTLER and Judges SIMONS, KAYE, ALEXANDER, HANCOCK, JR., and BELLACOSA concur; Judge TITONE dissents and votes to dismiss in an opinion.
*809 MEMORANDUM.
The order of the Appellate Division should be affirmed.
We agree that the prosecution failed in its burden to establish that the hearsay statements in issue fell within the "excited utterances" exception, by showing that declarant's several statements, beginning some time after a stabbing and continuing through his hospitalization, were made under the influence of the event and stilled his reflective powers (People v Nieves, 67 N.Y.2d 125, 131).[*] From declarant's level of responsiveness, his activity and his condition, it could not reasonably be concluded "that the remarks were not made under the impetus of studied reflection." (People v Edwards, 47 N.Y.2d 493, 497; see also, People v Brooks, 71 N.Y.2d 877; People v Brown, 70 N.Y.2d 513.) In light of this conclusion, we need not and do not consider whether the Appellate Division misapplied the governing legal standards by requiring that the declarant appear to others to have been in a life-threatening situation, by holding responses to police questions to a different standard from other statements made after a startling event, and by considering a recantation made by declarant three months after the stabbing as evidence that declarant had a motive to fabricate his statement at the time of the stabbing.
*810 TITONE, J. (dissenting).
In affirming the order below rather than dismissing the People's appeal from that order, the majority has misapplied the rules governing our jurisdiction in criminal cases and, in consequence, has sown the seeds for future confusion. Since accuracy, precision and consistency are critical values in this exacting area of law, I cannot join in the majority's disposition. Accordingly, despite my probable agreement with the majority's assessment if the merits could be reached, I write separately to explain why the posture of this appeal requires a dismissal.
CPL 450.90 (2) (a) provides that "[a]n appeal to the court of appeals from an order of an intermediate appellate court reversing * * * a judgment * * * of a criminal court may be taken only if * * * the intermediate appellate court's determination of reversal * * * was on the law alone or upon the law and such facts which, but for the determination of law, would not have led to reversal" (emphasis supplied). The statute, as amended in 1979 (L 1979, ch 651, § 1), also demands that the factual or legal nature of the ruling below be determined by this Court. Thus, even where the intermediate appellate court's order recites that its reversal was "on the law" alone, this Court must examine the decision and, where appropriate, the record below to determine whether the recitation correctly reflects the basis of the order sought to be appealed. And, when the Court's examination reveals that the decision was not based "on the law alone or upon the law and such facts which, but for the determination of law, would not have led to reversal," the appeal must be dismissed (see, e.g., People v Greene, 64 N.Y.2d 850; People v Hogya, 56 N.Y.2d 602; People v Bay, 54 N.Y.2d 808).
In this instance, although the Appellate Division order of reversal recites that it was based "on the law," a review of its opinion establishes beyond peradventure that its determination was, in reality, based on its disagreement with the trial court on the proper factual conclusions to be drawn from the evidence. The specific issue which concerned the intermediate appellate court was whether the various out-of-court statements made by the victim in the aftermath of the stabbing were admissible under the "excited utterance" exception to the rule against hearsay. Contrary to the majority's assertion (majority opn, at 809, n), problems falling into this category are typically treated not as law questions, but rather as "mixed" questions, requiring application of settled legal principles to the particularized facts of the case (see, e.g., People v Nieves, 67 N.Y.2d 125, 135 *811 ["determination whether * * * statements qualified as excited utterances requires factual determinations"]; People v Edwards, 47 N.Y.2d 493, 497 ["admissibility of an excited utterance is entrusted in the first instance to the trial court" (emphasis supplied)]; People v Marks, 6 N.Y.2d 67, 76-77 [admissibility of excited utterance is a "preliminary fact question"]).[1] Indeed, in this Court's two most recent decisions involving excited utterances, we resolved the evidentiary questions presented by stating only that "we cannot say that the trial court erred in admitting the statements as excited utterances" (People v Brooks, 71 N.Y.2d 877, 879; People v Brown, 70 N.Y.2d 513, 522). The use of this formulation, in which the Court merely accepted or refused to disturb a trial court's determination, would make little sense if the admissibility issue were a pure "question of law" squarely within the Court of Appeals own purview (cf., People v Harrison, 57 N.Y.2d 470, 477).[2] More importantly, in assessing the appealability of an order under CPL 450.90 (2) (a), the salient question is not, as *812 the majority suggests, whether the underlying issue is one of law (see, majority opn, at 809, n), but rather whether the intermediate appellate court actually based its decision on a legal, as distinguished from a factual, conclusion (see, People v Cona, 49 N.Y.2d 26, 33-34; see also, People v Albro, 52 N.Y.2d 619; compare, CPL 470.35 [2] [a], [b] [addressing reviewability on appeals from orders of reversal or modification]). On this point, it is clear from the opinion of the Appellate Division majority in this case that the court's reversal was based not on the law, but rather on its differing assessment of the facts and the inferences that should be drawn from those facts.
The majority first reviewed the testimony on the record in detail, making special note of the inconsistencies and other credibility problems that it perceived (164 AD2d 343, 345-346, 346-347, 348). The court also considered the parts of the victim's medical records that it deemed "pertinent," in particular, those that reflected on the degree to which the victim had been traumatized by his injuries (id., at 348; see, e.g., People v Brown, supra, at 520). The majority even went beyond the face of the "cold, bare record," stating that it had observed "the demeanor of the [declarant-]victim Roldos" by "listen[ing] to his tape recorded recantation," had "f[ound]" Roldos to be "calm" and "not fearful or confused" (160 AD2d, at 348) and had further found Roldos's recantation to be "powerful impeachment material" that was "[a]s illuminating as it was compelling" (id., at 349).[3]
Further, after reviewing the legal principles governing the admissibility of excited utterances (id., at 351-353), the Appellate Division majority stated its own "belie[f]" that the victim's injury was not sufficient "to have precipitated excited utterances" (id., at 353). Based on what it felt "[t]he transcript amply and repeatedly demonstrates," the court decided to *813 reject the trial testimony of the officers who had obtained the disputed declarations and instead drew its own conclusion that these officers were themselves "unimpressed by the [declarant's] injuries" at the time his statements were made (id., at 353-354). It then went on to consider a number of relevant factors, including the declarant's vital signs, his "conversational ability," the "factor of inquiry," the sufficiency of the declarant's opportunity to reflect and, finally, his motive to falsify, as to which the "compelling evidence" of the recantation tape was most useful as "impeach[ment of] the hearsay [declarations]" (id., at 354-355). And, if any doubt remains about the basis of the Appellate Division's decision, such doubt is necessarily dispelled by the court's own closing statement that it was ruling the out-of-court declarations inadmissible "upon our application of the legal standards to the facts in the case at bar" (id., at 355). Such a formulation, which is routinely used in "mixed question" determinations, makes it clear beyond dispute that the Appellate Division's order of reversal was not made "on the law alone."
In view of the Appellate Division's lengthy and dispositive review of the facts, the majority's cursory footnote (majority opn, at 809, n), which attempts to address the appealability issue, is plainly inadequate. Even if it were true that, in the abstract, the admissibility of excited utterances is a pure question of law and is therefore reviewable in this Court in a proper case, that conclusion would not explain how the specific order of reversal before us, which was explicitly predicated on factual determinations (including a credibility assessment), could be construed to satisfy the statutory standard for appealability. In the absence of any colorable, much less persuasive, effort by the majority to grapple with what the court below actually did, I must conclude that the order was not "on the law alone or upon the law and such facts which, but for the determination of law, would not have led to reversal." Accordingly, dismissal of the appeal is required.
Order affirmed in a memorandum.
NOTES
[*] While consideration of whether this exception applies requires factual determations  which we have held are to be made in the first instance by the trial court, as opposed to the jury (People v Nieves, 67 NY2d, at 135; People v Edwards, 47 N.Y.2d 493, 497; People v Marks, 6 N.Y.2d 67, 76-77) (see, dissenting opn, at 810-811)  the question whether a given set of facts takes a declarant's statement outside the exception is one of law which this Court may review (People v Brown, 70 N.Y.2d 513, 520). Indeed, as the reported decisions of this Court indicate, it is a law question which we have frequently addressed.
[1] The majority's citation to People v Brown (70 N.Y.2d 513, 520) suggests that its present assertion is based primarily on the Brown Court's characterization of the issue before it as "whether * * * the lapse of * * * time between the event and the * * * statements * * * and the fact that they were made in reply to * * * formalized questionin* * * take the statements outside the excited utterance exception to the rule against hearsay, as a matter of law" (id., at 520 [emphasis supplied]). However, as is evident from this language, as well as the rest of the Brown opinion, the point was not to establish the admissibility issue as a "question of law" in all cases, but rather to refute the argument that in the above-described circumstances the law precludes a finding of admissibility.
[2] The majority's assertion that the admissibility of "excited utterances" is a pure question of law is particularly surprising in view of the nature of the inquiry. As was stated in People v Edwards, (47 N.Y.2d 493, 497) and reiterated in People v Brown (70 N.Y.2d 513, 519) "The court must assess not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth. Above all, the decisive factor is whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection" (emphasis supplied). Such an inquiry, which requires the decision-maker to weigh a number of variables and draw inferences from the proven facts, is typical of "mixed question" analysis (see, e.g., People v Centano, 76 N.Y.2d 837, 838; People v Harrison, 57 N.Y.2d 470, 477; People v McRay, 51 N.Y.2d 594, 601) and is precisely the kind of fact-laden exploration that the Court of Appeals, as a "court of law," has previously shunned. Significantly, because it has determined that the admissibility issue is a law question, the majority has placed itself in the position of having to hold as a matter of law that none of the out-of-court declarations made by the victim were admissible as excited utterances  even the ones that were made immediately after he "hopped" or "ran" to the patrol car and, while sweating and speaking rapidly and appearing "frightened, wide-eyed and upset," told the police he had been stabbed and that defendant wathe assailant. While reasonable minds may certainly differ as to the inferences that could be drawn from these facts (and I tend to agree with the Appellate Division majority's views on the point), I find it farfetched, at best, to suggest that on no view of these events could a contrary conclusion be reached.
[3] I am puzzled by the majority's statement that it need not decide whether the Appellate Division erroneously considered the declarant's recantation in determining that his earlier statements were inadmissible hearsay (majority opn, at 809). This Court is mandated by CPL 450.90 (2) (a) to consider all of the Appellate Division's conclusions insofar as they affect our jurisdiction to entertain the appeal.