People v Dasque (2004 NY Slip Op 50017(U))

[*1]

People v Dasque

2004 NY Slip Op 50017(U)

Decided on January 13, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 13, 2004

Supreme Court, Queens County
 THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
against
RENEE DASQUE, Defendant
Indictment No.: 3311/01

For the Motion Michael Fishman, Esq.
Opposed by David Guy, Esq.

Sheri S. Roman, J.
An indictment has been filed against this defendant accusing her of the crimes of Murder in the Second Degree, Attempted Murder in the Second Degree, Assault in the First Degree and Tampering with Physical Evidence.
The charge is that on or about July 8, 2001, defendant, Renee Dasque, murdered her father, Jacques Dasque, and attempted to murder and assaulted her sister, Jeanine Dasque.
Because the complainant, Jeanine Dasque, died prior the commencement of the trial, defendant moved before Justice Hanophy for an order precluding the introduction into evidence at trial of any of her prior testimony and/or reports, records, exhibits or other evidence which would be used in substitution of her oral testimony were she available to testify at trial. Defendant claims that all of the prior statements of Jeanine Dasque are excludable from evidence as hearsay.
The People claim that the statement made by Jeanine Dasque to the Police and other witnesses, shortly after she had been assaulted, should be admissible at trial as it fits within the "excited utterance" exception to the hearsay rule.
Justice Hanophy referred the motion to the trial court. Prior to jury selection, this court commenced a hearing on the admissibility of the pre-trial statements of Jeanine Dasque.
The People called one witness to testify, Police Officer Diane Sweeny. The People informed the court that they had two other witnesses to whom statements were made. However, they were unable to locate one, and the other had long-term medical issues. The People asked to reserve their right to move to re-open the hearing and to call additional witnesses should they become available during trial.
Defendant did not call any witnesses.
This court finds the testimony of Police Officer Sweeny to have been credible and makes the following findings of fact and conclusions of law.
[*2]
FINDINGS OF FACTS
On July 8, 2001, Police Officer Diane Sweeny, formerly of the 105th Precinct, received a radio communication at 2:36 A.M. directing her to 249-11 147th Road. Per the stipulation of counsel, three 911 calls related to this incident were received at 2:34 A.M., 2:36 A.M. and 2:39 A.M. 
The Officer arrived at the location within three minutes, and encountered Jeanine Dasche walking down the street towards her house. The Officer noted that she was bleeding profusely from her head. As stated at the hearing by Police Officer Sweeny,
"She was very disoriented. She was a bit combative.
She wasn't cooperating with us. She was walking back and forth. When the ambulance came, we had a hard time getting her to go into the ambulance. She just, she didn't want to answer our questions and didn't want to do what we asked her to do."
The Officer described her demeanor as, "dazed," "confused," "a little disoriented," and "wandering around." She also said Jeanine, "didn't have a focus."
When Jeanine approached the driveway of her house, the Officer asked her what had happened and she said she was hit in the head with a pipe and that her sister had hit her. She also said that she lived in the basement of the house they responded to. The Police tried to get into the house and Jeanine told them they should ring the bell to get in. The Officer also asked the name of the sister that hit her and where she was. The Officer stated, "I didn't get a name from her. I couldn't get a clothing description. She really didn't give us very much." The Officer also said she didn't seem to be paying much attention to the questions because she was hurt.
The Officer also testified that seconds after Jeanine got into the ambulance she started vomiting.
 CONCLUSIONS OF LAW
As recently as December 22, 2003, in People v. Johnson, 2003 LEXIS 4124, the Court of Appeals had reason to revisit the issue of what constitutes an excited utterance. That court stated the principle as follows:
 "An out-of-court statement is properly admissible under the excited utterance exception when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication. 'Underlying this exception is the assumption that a person under the influence of the excitement precipitated by an external startling event will lack the reflective capacity essential for fabrication and, accordingly, any utterance he makes will be spontaneous and trustworthy. (People v. Edwards, 47 N.Y. 2d 493(1979)."

 The Court of Appeals then went on to specify certain criteria which the court should examine in making a determination of whether a statement constitutes an excited utterance. Those criteria include the period of time between the excited event and the out-of-court statement and the [*3]nature of the injury.
The court stated that there is no fixed or definite time within which the declaration must have been made and each case's circumstances must be individually scrutinized. The Court, citing People v. Brown, 70 NY 2d 513(19987) said that the utterance must be made before there has been time to contrive or misrepresent and while the nervous excitement still dominates and the reflective powers are held in abeyance. Further, the court stated in Brown, supra. that the mere fact that the statements are made in response to police questioning does not defeat the admissibility of the statements as excited utterances.
With respect to the nature of the injury, the Court stated in Johnson, supra. that merely because a victim is injured or is in pain does not mean that he lacks the capacity of studied reflection. The court must look at whether the injury is a significant factor in determining whether the declarant remains under the stress of the startling event.
Defense counsel argues that another factor to be taken into account in determining whether Jeanine had reflective capacity when speaking to Officer Sweeny is what actions she took in the time between the incident and the time she spoke with the Officer. Counsel argues that although there was no testimony at this hearing as to what actions were taken by Jeanine immediately after she was assaulted, there may be a possibility that she spoke to one or more persons who then made 911 calls on her behalf. This court finds that there is nothing in the record to show that Jeanine had any time for studied reflection. However, even if Jeanine had spoken with other individuals prior to Officer Sweeny's arrival on the scene, the evidence indicates that any intervening events did not dissipate her excitement at the time the statement was made to the Officer. See People v. Edwards, 47 N.Y. 2d 493(1979).
 This court finds that the statements made by Jeanine Dasque to Police Officer Sweeny were made under the stress of the excitement caused by the assault upon her and without a significant opportunity to reflect or fabricate and thus, the statement constitutes an excited utterance.
In making this determination this court has relied upon the testimony of Police Officer Sweeny with respect to her direct observations of the declarant's demeanor, physical appearance and the time when she made the utterances.
The testimony reveals that this statement was made minutes after the event in question. As stated above, the first 911 call came in at 2:34 A.M. The police arrived on the scene some three minutes later. Although it cannot be concluded how much time elapsed from the actual beating to the time the 911 call was placed, it can be inferred from the series of three calls placed at about the same time, and from the fact that the victim was observed to be bleeding profusely upon the officer's arrival that the 911 calls were made in close proximity to the actual assault, thereby placing Jeanine's statement as one made shortly after the event in question.
This court also concludes from the demeanor of the declarant, as described by Police Officer Sweeny, that she was still under the influence of the stress of the incident. The Officer testified that Jeanine was, dazed, confused and disoriented. The fact that she didn't answer all of the Officer's questions appears to be more a product of her inability to focus on the questions or pay attention to them rather than an indication of studied reflection.
This court finds that Jeanine's demeanor, her proximity to the scene as well as the fact that she was bleeding profusely from a head wound would have rendered Jeanine incapable of [*4]reasoned reflection.
Accordingly, for all of the above stated reasons, defendant's motion for an order precluding the introduction of pre-trial statements of Jeanine Dasque at trial is denied with respect to statements made to Police Officer Diane Sweeny on July 8, 2001.
The People may make an application to re-open the hearing during the trial should the missing fact witnesses become available.
Order entered accordingly.
Decision Date: January 13, 2004